# R. S. MATTHEWS et al., Appellants, v. JAMES G. VAN CLEVE et al.

### Division Two, April 9, 1920.

1. **WILL: Construction: Intention.** The guiding rule for the construction of a will is that effect must be given to the lawful intent and purpose of the testator, and all other rules are to be used merely as aids to it.

2. ———: **To Trustee for a Son and His Heirs: Active Trust: Life Estate: Judgment Creditors.** One clause of the will read: "I devise and bequeath to my son, Benjamin N. Tracy and his heirs the following described real estate . . . to have and to hold the same in trust for the use and benefit of my son, Milton C. Tracy and his heirs, the said trustee to have the sole management and control thereof, to collect the rents and pay the same to said beneficiary and his heirs, the said Milton to have no control or disposition of said estate and no power to encumber the same, but said trustee to have power to sell and convey the same or any part thereof for reinvestment in other property to be held by him

or his successors in the same way." *Held*, first, that, the will created an active trust; *second*, it gave to the trustee no power to encumber the property, by mortgage or otherwise; *third*, it vested the legal title in the trustee; *fourth*, the income was inalienable, could not be anticipated, and was not subject to debts or liens created by the beneficiary; *fifth*, the devise was valid against judgment and all other creditors of the beneficiary; *sixth*, upon the death of Milton, his entire interest in the estate died with him, leaving nothing to which the rights of his creditors could attach, nor anything upon which their prior judgments against him could operate; *seventh*, the interest of Milton in the real estate was an equitable life estate in the income only; and, *eighth*, judgments against Milton and the trustee, though final, were effective only against Milton's life estate in the income, which terminated with his death, and do not survive as against Milton's heirs.

3. ——: ——: Judgments: Subsequent Creditor's Bill: Estopped of Remaindermen. Where the will devised real estate to a trustee "for the use and benefit of my son, Milton C. Tracy and his heirs, the said trustee to have the sole management and control thereof, to collect the rents and pay the same to said beneficiary and his heirs, the said Milton to have no control or disposition of the same and no power to encumber the same," judgments against the trustee and Milton for Milton's debts availed his creditors nothing as against the remaindermen; and a creditor's bill, based on said judgments, whereby his creditors were given a perpetual judgment lien upon the property left in trust to the trustee, in which the trustee acquiesced by silence, does not affect the interest of the remaindermen, nor are they estopped to question the validity of said judgment, for the trustee could not fritter away their title by unauthorized admissions, and besides the interest of Milton died with him. The judgments did not operate on the income received by the trustee for Milton's use; and neither they, nor the judgment on the cross-bill, operated on the equitable interests of his heirs.

4. ——: ——: ——: Laches. No rights of the remaindermen requiring assertion accrued to the remaindermen under said will until the lifetime beneficiary died, and if he died after the suit was instituted they could not be charged with laches for not sooner asserting their rights as against the invalid judgments rendered in favor of his creditors against him and the trustee. There can be no laches unless the opposite party has been prejudiced by delay.

5. ——: ——: Life Estate. A devise to a trustee of certain real estate "for the use and benefit of my son and his heirs" may cre-

Matthews v. Van Cleve.

ate an equitable life estate in the income in the son and an equitable fee in his heirs.

6. ——: ——: **Active Trust.** A devise to a trustee for the use and benefit of a son and his heirs, with full control and management vested in the trustee and no power of encumbrance or disposal, is inconsistent with an estate in fee in the son.

7. ——: ——: ——: **Suit Against Beneficiary: His Death and Revivor: New Questions.** The will devised real estate to a trustee for a son and his heirs. Suit was brought by the trustee and the son to have annulled certain judgments in favor of the son's creditors. The son died during the pendency of the suit, and it was revived by the substitution of his heirs as plaintiffs. To their amended petition defendants entered their appearance and joined issues. *Held,* that whether or not objection to that method of procedure would have been availing in the trial court need not be considered, for the suggestion that the heirs are limited to such questions as could have been made by the son is made for the first time in this court and cannot therefore be considered.

Appeal from Macon Circuit Court.—*Hon. Nat M. Shelton,* Judge.

REVERSED AND REMANDED.

*R. S. Matthews,* and *Otho F. Matthews* for appellants.

(1) Plaintiffs contend that in the plain language of the third item of the will it states that Milton C. Tracy could not in any way mortgage, sell or create debts that would be a lien upon the real estate in question. It puts the fee simple in Ben N. Tracy and his successors. Upon the death of Milton C. Tracy, the title vests in the heirs of Milton C. Tracy, or as it is contended, the title vests in the heirs of Benjamin N. Tracy, Sr., deceased, the maker of the will, and it makes no difference because they are the same identical persons as the heirs of Milton C. Tracy. 28 Am. & Eng. Ency. Law, p. 959; Partridge v. Cavender, 96 Mo. 452; Peeken v. Dorres, 20 Mo. App. 5. These Missouri cases give the rule of construing such wills and hold that the legatee cannot even encumber the

rents and profits. Graham v. More, 189 S. W. 1186. (2) It is not necessary that an instrument creating a spend-thrift trust should contain an express declaration that the interest of the *cestui que trust* in the trust estate shall be beyond the reach of his creditors, providing such appears to be the clear intention of the testator or donor as gathered from all parts of the instrument construed together in the lights of the circumstances. 26 Am. & Eng. Ency. Law (2 Ed.), p. 141; Pugh v. Hays, 113 Mo. 424; Walton v. Ketchum, 147 Mo. 209. In an active trust, the legal title is in the trustee. Simpson v. Erisner, 155 Mo. 157; Simpson v. Jennings, 163 Mo. 332. (3) The word "heirs" after "Milton C. Tracy," is not a word of inheritance, but a word of limitation, and Milton C. Tracy has no title in law or in equity in the property in controversy. Jarboe v. Hey, 122 Mo. 341; Lampert v. Haydel, 96 Mo. 439. There can be no estate limited after an estate in fee. (4) The judgments were all obtained without any appearance on the part of the defendant, M. C. Tracy, in person or by an attorney, as shown by judgments themselves as entered of record, and offered in evidence. The record of attempted revival of all of said judgments in 1906 was without service on Milton C. Tracy, of any kind, and without his knowledge or consent, and without any authority of anyone to appear for him. Likewise, the attempted consolidation of the three judgments into a creditors' bill was without any notice to Milton C. Tracy and without any process or service on him, and without his knowledge and without authority of his trustee to appear for him in any manner, whatever, if the said James W. Roberts could be construed as his trustee, never having qualified by giving bond or making reports to the court, etc. All of said judgments are void. The statutes require that *scire facias* should be served upon Milton C. Tracy. R. S. 1909, p. 915. Hence, the proceedings in 1906 and 1907 are void. Said judgments are now barred by the Statute of Limitations. (5) The creditors' bill is void for the further reason that the said Milton C. Tracy takes nothing under the provision in

the will of his father, only the rents of the real estate for life. (6) For a judgment creditor to maintain a creditor's bill, it must appear that he has exhausted his legal remedies for the collection of the judgment. In this case, the evidence shows that Milton C. Tracy had property not subject to any trust at all times since said judgments were obtained, and that no execution was ever issued thereon. Wilkinson v. Goodin, 71 Mo. App. 394; Merry v. Fremon, 44 Mo. 518; Alnutt v. Leper, 48 Mo. 319; Humphreys v. Milling Co., 98 Mo. 542; Thias v. Siener, 103 Mo. 314; Miller v. Hewitt, 113 Mo. 639; Rayburn v. Mitchell, 106 Mo. 365; Clark v. First Natl. Bank, 57 Mo. App. 277; Paddock-Hawley Iron Co. v. McDonald, 61 Mo. App. 559. (7) When a trust is an executive or an active one with the legal title to the trust vested in the trustee, it cannot be in any manner reached or interfered with by the creditors of the beneficiary. Schoeneich v. Field, 37 Mo. App. 452; Merry v. Fremon, 44 Mo. 518. (8) Appearance cannot be waived on a creditors bill or a revival, and this goes to the jurisdiction of the subject-matter and is fatal in every stage of this case and cannot therefore be cured by any waiver or course of any proceeding by the parties. Baxter v. Moses, 77 Mo. 465; Brown v. Bank of Mississippi, 31 Miss. 454.

*B. R. Dysart* and *John T. Gose* for respondents.

(1) Milton C. Tracy took an equitable fee in the trust property in question, by the will of his father as found by the court in the instant case. The property was devised to a trustee for the sole use and benefit of Milton C. Tracy. The property was not limited over to any other person or use. There was no remainderman mentioned or provided for. All the property of testator was disposed of. That the property devised was intended for Milton C. Tracy is made evident and conclusive by the eighth item of the said will, wherein the testator speaks of the property in question as "bequeath-

ed and devised to my said son, Milton.'' Hardin's Exr.
v. Hardin, 186 S. W. 893. The plaintiff's contention that
Milton C. Tracy only took a life estate is not sound.
Where the court had jurisdiction, its judgment is not
subject to collateral attack, as in this case. State ex rel.
v. Bank, 213 S. W. 815. (2) Had this been a dry trust,
with no duties to perform by the trustee, it would have
been executed at once by the Statute of Uses. Sec. 2867,
R. S. 1909; Carter v. Long, 181 Mo. 710; Perry on
Trusts (5 Ed.), sec. 298; Webb v. Hayden, 166 Mo. 48;
Newton v. Rebenack, 90 Mo. App. 656. (3) If a will
creates an active trust, requiring duties to be performed,
the legal title does not vest in the beneficiary or the
cestui que trust, until such duties are performed. Pew v.
Hayes, 113 Mo. 424; Simpson v. Erisner, 155 Mo. 157;
Garland v. Smith, 164 Mo. 1. (4) The plaintiff contends
that the circuit court had no power or jurisdiction to
provide and adjudge a continuing lien in favor of these
defendants in rendering its judgment in the creditors
suit on January 10, 1907. A court of equity has jurisdic-
tion of liens. In 25 Cyc. 681. (5) In the decree of Janu-
ary 10, 1907, the court granted a stay of execution during
the lifetime of Milton C. Tracy, which the court clearly
had the right to do. And it is well established that the
granting of a stay of execution is equivalent to extending
the lien until the time of the stay expires. Mercantile
Trust Co. v. Ry. Co., 69 Fed. 193; State ex rel. v. Deer-
ing, 180 Mo. 68. (6) The creditors' bill was the proper
proceeding in a case where the property is held in trust.
5 Ency. Plead. & Prac. pp. 391, 598 and 608; Titus v.
Development Co., 264 Mo. 229. A defendant can have
relief on his cross-bill where the plaintiff for any cause,
fails to recover. A dismissal of the plaintiffs' petition,
whether voluntarily or by order of the court, does not
dispose of the cross-bill, but it is the duty of the court
to proceed and render judgment on the cross-bill. 5
Ency. Plead. & Prac. pp. 632, 663 and 664; 25 Cyc. 684:
McMurray v. McMurray, 258 Mo. 416.

WILLIAMSON, J.—Appellants brought their suit, a proceeding in equity, in the Circuit Court of Macon County, Missouri. The issues were duly made up, and upon a hearing of the cause the judgment of the court was in favor of the defendants, and plaintiffs thereupon appealed to the Kansas City Court of Appeals. That court transferred the case to this court, on the ground that the title to land is involved in the proceeding. A motion to remand having been overruled, the cause remains here for decision. The facts out of which this controversy arose are substantially as follows:

Benjamin N. Tracy, Senior, was the father of Milton C. Tracy, Bettie Tracy Roberts, Luther G. Tracy, Benjamin N. Tracy, Junior, and Aubrey D. Tracy. Benjamin N. Tracy, Sr., died, testate, in Macon County, in 1873. His will was duly admitted to probate in that county, and the estate was duly administered. His wife, Frances W. Tracy, is also dead.

The third paragraph of testator's will reads as follows:

"I devise and bequeath to my son, Ben N. Tracy and his heirs the following described real estate, to-wit: Twenty-six feet off of the east end of Lots One and Two in Block 87 in Macon City, Missouri; also Lot No. Thirty in College Addition to Macon City, Missouri, and Lot No. Six in Block 167 in the College Addition to said City of Macon; to have and to hold the same in trust for the use and benefit of my son, Milton C. Tracy and his heirs, the said trustee to have the sole management and control thereof, to collect the rents and pay the same to said beneficiary and his heirs, the said Milton to have no control or disposition of said estate and no power to encumber the same, but said trustee to have power to sell and convey the same or any part thereof for reinvestment in other property to be held by him or his successors in the same way."

Benjamin N. Tracy, Jr., on the death of his father, duly qualified as trustee of Milton C. Tracy, and acted in that capacity for a number of years. He was suc-

ceeded in the office of trustee by one Philip Trammel, who was succeeded by James W. Roberts (husband of the defendant Bettie Tracy Roberts), who resigned in 1912, and the plaintiff R. S. Matthews was then appointed trustee in his place, and acted in that capacity until the death of Milton C. Tracy, July 11, 1915.

This suit was originally brought by Milton C. Tracy and his said trustee, R. S. Matthews, against James G. Van Cleve, Edwin McKee and Edward J. Demeter, all of whom are judgment creditors of the said Milton C. Tracy, and Bettie Tracy Roberts and Charles H. Payson. Upon the death of Milton C. Tracy pending the suit, his heirs, Fred N. Tracy and Luther G. Tracy, were substituted as parties plaintiff in his stead.

It is alleged in the petition that by inheritance or purchase the title to all of the land involved in this action is now vested in the three plaintiffs and in the defendant Bettie Tracy Roberts. Mrs. Roberts, however, also claims in her answer to be the sole owner of these lands by virtue of the will of Milton C. Tracy. Further details as to the derivation of title are not necessary to an understanding of the issues of this case.

Charles H. Payson was made a party defendant because he also had a judgment against the decedent, Milton C. Tracy, and under his said judgment had caused an execution to be issued, and had levied the same upon the interest of Betty Tracy Roberts in said real estate. Further reference to this matter is unnecessary.

It is further alleged that for about fifteen years prior to his death, Milton C. Tracy was an invalid, confined to his home and unable to attend to any business; that the defendants Van Cleve, McKee and Demeter had each obtained separate judgments against said Milton C. Tracy, and thereafter had brought a creditors' bill, so-called, in the Circuit Court of Macon County, Missouri, whereby, as they claim, they had obtained a perpetual lien upon the portion of the property left in trust to Benjamin N. Tracy, Jr., for the use of the

said Milton C. Tracy by the will of the testator. This proceeding was had during the latter years of the life of Milton C. Tracy, and at a time when his brother-in-law, James W. Roberts, was acting as his trustee. James W. Roberts was an attorney-at-law, and, it is alleged, undertook to enter the appearance of the said Milton C. Tracy to said action in the nature of a creditors' bill, and no process whatever was served upon the said Milton C. Tracy in that suit. Plaintiffs allege that the conduct of the said Roberts in so doing was unauthorized and fraudulent, and done in connivance with the said judgment creditors and without the knowledge, consent or approval of the said Milton C. Tracy, and that the judgment so rendered is, for that and other reasons in the petition alleged, null and void; that the original judgments in favor of said judgment creditors separately are barred by the Statute of Limitations, and that neither the original judgments nor the judgment obtained in the so-called creditors' bill proceeding constitute a lien upon the lands in question.

It further appears that by order of court, in an effort to preserve the trust estate, the trustee was authorized to borrow of one George W. Gilstrap, the sum of six hundred dollars, and to give a deed of trust upon the property in question to secure the same, which he did. The validity of this deed of trust is not attacked. It appears that a portion of the trust estate had been sold, and in violation of the terms of the will, the proceeds had been paid to the said Milton C. Tracy, or used in the payment of taxes against the trust property, so that at the time of the suit but a small part of the trust estate remained.

The answer of the defendants Van Cleve, McKee and Demeter admits that they severally obtained judgments against the said Milton C. Tracy, and that their judgments were afterwards consolidated in one judgment in the so-called creditors' proceeding, and the original judgments were thereupon released upon the record. They deny the allegations of fraud and collusion between themselves and Roberts, trustee, plead

that their judgments were from time to time revived by writs of *scire facias* until consolidated in the creditors' judgment aforesaid; aver that Roberts was duly authorized to enter the appearance of Milton C. Tracy to these various proceedings, both as his trustee and as his attorney; plead that no appeal was taken from the judgment rendered in the creditors' bill proceedings against Milton C. Tracy and James W. Roberts in January, 1907, and that all questions concerning the same are now *res adjudicata;* that the existence of said judgment was well known to Milton C. Tracy for a long time prior to this death, and to the plaintiff R. S. Matthews at the time of his appointment as trustee; that Milton C. Tracy died testate; that his will was duly probated in the Probate Court of Macon County, Missouri, and that by the terms of his will the said Milton C. Tracy devised and bequeathed to the defendant Bettie Tracy Roberts the real estate here in question, which seems to have been practically all he had, and that by reason of the facts alleged plaintiffs are estopped to question the validity of the said judgment and lien obtained in said creditors' bill proceeding; that by his quiescence and silence the plaintiff Matthews had lulled defendants into a false sense of security, until it was too late to revive the judgments in their favor, and that plaintiffs are thereby estopped to question the validity of the judgments in the said creditors' bill proceeding.

Van Cleve, McKee and Demeter also filed their cross-bill, alleging the judgment obtained by them in January, 1907, against the said Milton C. Tracy and James W. Roberts, his trustee, in the creditors' bill proceeding aforesaid; that by the terms of said judgment it was to be a continuing lien upon the lands here involved, until the death of said Milton C. Tracy, and that thereafter the property was to be sold to satisfy said judgment; and praying that the land be sold to satisfy the judgment aforesaid, after the payment of six hundred dollars due the said George W. Gilstrap.

Bettie Tracy Roberts filed a separate answer, deny-
ing that either the defendants Van Cleve, McKee and
Demeter or the plaintiffs, or any of them, have any
interest in said real estate, and claiming to be the
sole and exclusive owner thereof, apparently basing
her claim upon the will of the said Milton C. Tracy.
This defendant prayed for a judgment of the court
divesting title from the plaintiffs and her co-defendants,
and vesting the title to the entire property in herself.

The answer of the defendant Charles H. Payson
admitted that he had obtained judgment against his
co-defendant Bettie Tracy Roberts; that execution
had been issued thereunder, and levy made upon her
interest in the real estate in question, and denied that
her interest in said real estate was subject to a lien in
favor of the defendants Van Cleve, McKee and Demeter.

Plaintiffs' reply to the answer of Van Cleve,
McKee and Demeter was in substance a general denial,
coupled with an allegation that under the will of Ben-
jamin N. Tracy, Sr., the title to the property left in
trust to Milton C. Tracy vested, upon the death of
said beneficiary, in the heirs of Benjamin N. Tracy,
Sr., that none of his heirs were made parties to the
said creditors' bill proceeding, nor to any proceeding
in which the said Van Cleve, McKee and Demeter
obtained any judgment, and therefore plaintiffs were
not bound by said judgments.

Upon a hearing of the cause, the court dismissed
plaintiffs' petition and adjudged the judgment and
decree rendered on the 10th day of January, 1907, in
favor of Van Cleve, McKee and Demeter, to be a valid
lien upon the premises in question, and ordered a sale
of said lands and directed that the proceeds should be
applied, first, to the payment of the note held by the
said Gilstrap, and the remainder to the payment of the
several judgments in favor of said Van Cleve, McKee
and Demeter. It seems to have been conceded that the
property would not be more than sufficient to pay
these sums, after paying the costs, and no judgment

was rendered concerning the disposition of any possible surplus. The judgment is silent as to the defendants Mrs. Roberts and Payson.

Plaintiffs duly filed their motion for a new trial, and, their motion being overruled, they have appealed.

The questions arising in this case involve the construction of the will of Benjamin N. Tracy, Sr. Upon the proper interpretation of those portions of the will relating to Milton C. Tracy, the decision of this case hinges.

In this instance, as in all others relating to the construction of wills, the guiding rule of construction is that effect must be given to the lawful intent and purpose of the testator. All other rules of construction are merely to be used in aid of that rule.

It will be noted that the testator devised the property in question, and other property (to use the words of the will itself), "to my son Ben N. Tracy and his heirs . . . to have and to hold the same in trust for the use and benefit of my son, Milton C. Tracy and his heirs." The trustee is, (a) to have the sole management and control of the trust estate; (b) to collect the rents and pay the same to the beneficiary and his heirs; (c) to have power to sell and convey the lands embraced in the trust, or any part thereof, and (d) to reinvest the proceeds in other property to be held in trust in like manner. This was an active, not a passive trust. [Pugh v. Hayes, 113 Mo. 424; Higbee v. Brockenbrough, 191 S. W. 994; Maxwell v. Growney, 213 S. W. 427; Freeman v. Maxwell, 262 Mo. 13.]

It will be noted further that the will in express terms provides that the beneficiary is given no control or disposition of the trust property, and no power to encumber it. Thus, both by affirmative language as to the trustee and negative language as to the beneficiary, the control, management and disposition of the trust property is vested in the trustee, and in him alone. The language is clear, apt, emphatic and ad-

mits of no double construction. No other provisions of the will modify or in any way alter the meaning of the quoted clause.

The intention of the testator clearly was to create an active trust; to vest the legal title in the trustee, and to provide for the payment of the income only to Milton C. Tracy, and we hold that that is what he did.

The trust so created is what is called a spendthrift trust. There is much learning in the books respecting spendthrift trusts and much might be said concerning the varying doctrines concerning them to be found in the English law, in the Federal courts, and in the reports of our sister states, but, happily, there is no need to enlarge on those matters. Our own courts have long since adopted fixed principles concerning such trusts, and have consistently adhered to them.

In the case at bar, the beneficiary had no control over any part of the trust estate except the income, nor any control over that until it was paid to him. It was the clear intent of the testator that this income should be inalienable, that it should not be anticipated, and that it should not.be subject to any debts or liens created by the beneficiary. The will, in set terms, provides that the beneficiary shall have "no power to encumber" the estate, and "no control or disposition" of it.

Is this devise then, valid or invalid as against creditors of the beneficiary, whether judgment-creditors or otherwise? We think it is valid. The beneficiary had only an equitable life estate in the income. Spendthrift trusts are of equitable origin, and are cognizable in courts of equity only. Equity is fond of enforcing trusts, and of effectuating the intentions of donors. In the case at bar, the intention of the donor is clear. It was his own property that he was giving away. It was to his own son—bone of his bone and flesh of his flesh—that he was giving gifts. His obvious purpose was to provide for that son against existing or anticipated misfortune, perhaps against the son's own

improvidence or lack of business acumen, and the effect of the provision was, *pro tanto*, at least, not only to provide for the son but to guard the public against the possibility of the son's ever becoming a public charge. The provision was evidenced by a writing eligible to record and required by law to be recorded. As to antecedent creditors, no harm could come to them because their debts were contracted before the will became operative, and subsequent creditors became so, charged with notice of all of the provisions of the will. The purpose was lawful, the means proper, and the end laudable, for it is written:

"But if any provide not for his own, and specially for those of his own house, he hath denied the faith, and is worse than an infidel." [I Tim. 5, 8.]

Of more specific application, perhaps, are some of our own decisions. The following are a few of many, that might be cited. [Lampert v. Haydel, 96 Mo. 439; Partridge v. Cavender, 96 Mo. 452; Jarboe v. Hey, 122 Mo. 341; Heaton v. Dickson, 153 Mo. App. 312; Kessner v. Phillips, 189 Mo. 515, l. c. 523; Graham v. More, 189 S. W. 1186; Higbee v. Brockenbrough, *supra.*] Further authority for the views herein announced may be found in the learned opinion of Mr. Justice MILLER in Nichols, Assignee, v. Eaton, 91 U. S. 716, and the cases there cited.

Accordingly, we hold that the clause of the will in question was valid as against creditors and all others, and being so, upon the death of the beneficiary, his entire interest in the trust estate died with him, leaving nothing to which the rights of creditors could attach, nor anything upon which judgment liens could operate.

But it is said that respondents, the judgment creditors, during the lifetime of the beneficiary, in a suit to which he and his then trustee were parties, were adjudged a lien upon the property in question, and that that judgment is in full force and effect. It is conceded, however, that only the beneficiary and his then trustee, Roberts, were parties defendant to the suit in which

that judgment was rendered. What was the effect, then, of that judgment? It seems clear, on principle, that it could only have been effective against whatever interest the beneficiary, Milton C. Tracy, had in the trust estate, and that interest, as we have seen, was an equitable life-estate in the income only. That estate terminated at his death. Certainly the remaindermen, not being parties to that suit, are not bound by any judgment rendered in it. Their interests are not affected by it. As to them the situation is as if no such judgment had ever been rendered, and the beneficiary being now dead, it is the rights of the remaindermen, only, that are now to be determined. On a point so elementary no authorities need be cited. It follows that their judgment avails respondents nothing.

On the facts set out in our statement of facts, respondents say that appellants are estopped now to question the validity of the judgment rendered in the creditors' bill proceeding. We think there is no merit in this contention. In the first place, appellant Matthews, as trustee for Milton C. Tracy, the beneficiary, could not fritter away the title of the remaindermen to the trust property, by unauthorized admissions, nor could the beneficiary do so. In the second place, there is no virtue in this plea of estoppel, for the reason that, even if respondents had revived the judgments rendered in their favor in 1903, they would not have been benefited thereby, so far as the property here involved is concerned, because the interest of Milton C. Tracy in the trust testate, for the reasons stated, died with him. Estoppel arises only when one has been misled to his hurt, by the conduct of another. [De Lashmutt v. Teetor, 261 Mo. 412.]

Neither do we think there is any merit in respondents' plea of laches. They are not shown to have been prejudiced by any delay on the part of appellants in asserting their rights in the premises. No rights requiring assertion accrued to appellants until the death

of the beneficiary, and it appears from this record that the beneficiary died after the institution of this suit.

Having reached the conclusions already announced, there is no need to discuss other questions arising in this case. We conclude, therefore, that the learned chanceller was in error in holding that Milton C. Tracy under the will of his father took an equitable fee title in the real estate here in question, and was also in error in holding that the judgment in the creditors' proceeding, as of date January 10, 1907, constituted a lien upon that real estate. Appellants were therefore entitled to a decree declaring that judgment not to be a lien upon said lands, and their petition seeking that relief was erroneously dismissed. Since the holder of the six-hundred dollars deed of trust was not a party to this action, his rights are not in anywise adjudicated.

For the reasons stated, the judgment of the lower court should be reversed and this cause should be remanded for further proceedings consistent with this opinion.

It is so ordered. All concur.

## On Motion for Rehearing.

WILLIAMSON. J.—Respondent in a motion for a rehearing suggests that this is "the first time that an opinion of this court has ever held that a devise to *A and his heirs* creates a *life estate* because the testator provides that A cannot control, dispose of or incumber the property conveyed." In Cross v. Hoch, 149 Mo. 325, the testator devised certain property "to my daughter Sarah Cross and her heirs," but "subject to the trust, care and control of" a named trustee. It was contended in that case, as it is here, that the use of the words "and her heirs" created a fee simple estate in the devisee, but the Court in a well-reasoned opinion in which many authorities are reviewed, held that the devisee took only a life estate. There is a

striking analogy, also, between the facts in that case and in the case at bar. In the Cross case the testator devised various lands to different daughters evidently intending to vest in them severally, and in law and in fact actually vesting in them, a fee to the lands devised, without using the words "and her heirs," but when referring to Sarah Cross he did devise the lands to her "and her heirs," and, as stated, this was held to create a life estate only. So in the instant case, testator devised in one paragraph of his will certain lands "to my son Aubrey D. Tracy" and in another paragraph he devised certain lands "to my son Benjamin N. Tracy"—in neither case using the words "and his heirs", though a fee was obviously intended—but when he made the devise of the lands here in question, that devise was to the trustee "for the use and benefit of my son Milton C. Tracy and his heirs." In the light of the context, as well as of the authorities, we think that no fee passed to the beneficiary. The restrictions upon use, control and disposition are inconsistent with an estate in fee. [Burnet v. Burnet, 244 Mo. 491, 1. c. 505; Potter v. Couch, 141 U. S. 315; 16 Cyc. 601; 2 Washburn on Real Property, 484.]

This action was originally brought by the beneficiary and his trustee, and was "revived" upon the death of the beneficiary, at which time an amended petition was filed and the heirs of the beneficiary were substituted as parties plaintiff. To this amended petition respondents entered their appearance and joined issues. No objection to that method of procedure appears to have been made in the trial court. Whether such objection, if properly made, would or should have prevailed, we need not now inquire. The cause was tried in all respects as if brought in the first instance by the plaintiffs in the amended petition. While a plea of *res adjudicata* was made below, based upon the judgment in the creditors' bill proceeding, the suggestion that, because of the revivor, the present plaintiffs are limited to such questions as could have

been made by the beneficiary, and none other, makes it's initial appearance in this court and cannot be considered. [Ice & Cold Storage Co. v. Kuhlmann, 238 Mo. 685, l. c. 705.]

The limitations of time and space forbid a review of the numerous authorities cited, although we have read all of them with interest. After a careful review of the law and the facts of this case, we see no reason for a different conclusion from that heretofore expressed. The motion for a rehearing is denied.

All concur.